MARION F. EDWARDS, Chief Judge.
| gDefendant/appellant, Terrance T. Favorite (“Favorite”), appeals his conviction of possession of a firearm while in possession of marijuana, in violation of La. R.S. 14:95(E) (count one) and possession of cocaine in violation of La. R.S. 40:967(C) (count two).
In the bill of information, Kirk Favorite and Lance Powell were also charged with possession of cocaine. On December 6, 2010, the State amended the bill to change the spelling of defendant’s name to “Terence Favorite” and to correct his date of birth. The matter before us relates only to Terence Favorite. The bill of information was amended again by the State on February 2, 2011, at which time the State entered a nolle prosequi as to Terence Favorite in count two of the bill of information, and the date of the offense in count one was amended to reflect May 25, 2010.
IsOn February 2, 2011, Favorite proceeded to trial, but the court declared a mistrial when the jury was deadlocked after deliberations. A second trial com- *1060 meneed on July 7, 2011, following which a twelve-person jury found him guilty as charged of possession of a firearm while in possession of marijuana.
On July 11, 2011, Favorite filed a motion for acquittal notwithstanding the verdict and a motion for new trial, which were denied on the same date. Also on that date, Favorite was sentenced to five years of imprisonment at hard labor. Sentence was imposed without benefit of parole, probation, or suspension of sentence, and was ordered to run concurrently with the sentences imposed in Case Nos. 10-1861 and 11-2946 and with any other sentence defendant “may be serving.” Favorite immediately filed a motion to reconsider sentence and a motion for appeal. On July 12, 2011, the motion to reconsider sentence was denied, and the motion for appeal was granted. This appeal follows.
At trial, Detective Ashton Gibbs of the Gretna Police Department applied for and received a search warrant for two residences located at 580 and 582 Behrman Highway, which shared a common wall, in Jefferson Parish. At that time, he and Detective Curt Johnson of the Plaque-mines Parish Sheriffs Office were assigned to a multi-jurisdictional task force called the Major Crimes Task Force. The Task Force involved law enforcement from Jefferson, Orleans, and Plaquemines Parishes, and sought to rebuild the various intelligence bases regarding certain criminals who were displaced following Hurricane Katrina. On May 24, 2010, Detectives Gibbs and Johnson conducted undercover surveillance of the two residences in an unmarked vehicle in an attempt to gather additional intelligence. During the daytime, the detectives observed the residences from a parking lot and used binoculars to aide in their surveillance. For a few hours, they observed people coming to and from the residences by foot and by vehicle and having 14conversations with some of the occupants that were loitering outside. Many of the visitors went inside the residences for a brief amount of time and then departed. Favorite, whom Detective Gibbs identified in court, was one of the individuals the detectives observed outside the residence. Additional surveillance was conducted on the residences on the following day, at which time Favorite was again observed outside of the residence at 580 Behrman Highway.
Detective Gibbs testified that he saw Favorite meet with three Hispanic males a few residences away at 576 Behrman Highway. After a conversation, Favorite returned to the residence at 580 Behrman Highway for a brief time and exited the residence carrying an object that was covered with a black shirt. Detective Gibbs could not determine what the object was, but saw him enter a vehicle, which was parked in front of the residence, with the object. The object was long and required two hands to carry. The vehicle, along with the three Hispanic males, left 576 Behrman Highway, with Favorite sitting in the front passenger seat.
Detectives Gibbs and Johnson followed the vehicle, a Dodge Stratus, to continue their investigation. Detective Gibbs testified that they followed the vehicle less than two miles away to 161 Fredrich’s Road, an area he knew to be “King Fred-rieh’s Apartments.” Detective Gibbs testified that he had been an officer for seven years and had conducted a number of illegal narcotics investigations at this apartment complex. When the vehicle pulled into a parking lot, the three Hispanic males remained inside, while Favorite exited and went to the second building to a breezeway, where he met with an unknown individual who was standing there. They had a brief conversation lasting a few sec *1061 onds. According to Detective Gibbs, Favorite handed what appeared to be U.S. Currency to the unknown individual and received an object from the individual in return. Detective Gibbs did not know what the object was. Favorite returned to the | ¿passenger's side of the vehicle, and they left immediately. Detective Johnson also testified that he believed that he witnessed a hand-to-hand transaction.
The detectives continued to follow the vehicle for about “a quarter mile or so” then elected to stop the vehicle. Detective Johnson activated his emergency lights and siren, and the driver pulled over into a parking lot. Detective Johnson, who was driving the unmarked unit, approached the driver’s side of the vehicle, while Detective Gibbs approached the passenger’s side. Favorite was seated in the front passenger’s seat.
Detective Gibbs testified that he heard Favorite tell him he had a gun. Once Detective Gibbs got closer, he noticed that Favorite had both of his hands on an AK47 style assault rifle, which was in his lap. Detective Gibbs explained that the gun was positioned between Favorite’s legs with the barrel pointed down towards the floorboard. Detective Gibbs advised Detective Johnson of the gun, and Detective Johnson covered him as he retrieved the weapon. All of the occupants had their hands in the air. Detective Gibbs explained that the passenger’s side window was down. He told Favorite to keep his hands up and to hand the rifle to him out of the window with the butt end of the weapon facing the detective and the barrel end facing down to the floorboard of the vehicle. After Detective Gibbs retrieved the weapon, he took the loaded rifle to the unmarked unit, where he rendered the rifle safe by taking out the magazine and removing the rounds from the chamber. Detective Johnson remained with the vehicle and testified that he did not see anyone put their hands down or make any quick movements as he watched. Detective Gibbs testified that he never saw Favorite do anything suspicious with his hands in an attempt to conceal or discard evidence. Detective Gibbs said that, when he returned to the vehicle, he and Detective Johnson began removing | ¿occupants from the vehicle for officer safety. Pat downs were conducted on the occupants, but no further weapons were found.
When he returned to the vehicle, Detective Gibbs noticed the front passenger’s door was still open. He was able to observe four Ziploc style plastic bags on the front passenger’s floorboard. He described the bags as containing “green leafy vegetable matter,” which he believed was consistent with marijuana. A field test was conducted, and the presence of marijuana was confirmed. At trial, Detective Gibbs demonstrated where the four bags were located in the vehicle, and he agreed that the four bags were located directly in front of the passenger’s seat. Detective Gibbs advised Favorite that he was under arrest and advised him of his Miranda rights. Detective Gibbs asked Favorite if the marijuana in the vehicle belonged to him, and he denied ownership of it. He testified that Favorite told him he purchased the rifle from a pawn shop for $800, but he could not identify the pawn shop. Favorite told the detective that he had the paperwork for the rifle at his residence at 580 Behrman Highway and that he was disabled and unemployed. Detective Gibbs said that Favorite claimed he was at the King Fredrich’s Apartments just prior to the stop because he had slept overnight at his aunt’s apartment and had called the Hispanic males to pick him up because he needed a ride. However, he could not provide Detective Gibbs with the number of his aunt’s apartment.
*1062 A computer inquiry revealed that there was a traffic attachment for the driver of the vehicle, Adrian Banagas Mila. He was arrested, and Detective Johnson searched his person. The search of his wallet revealed a Ziploc style plastic bag with green leafy vegetable matter consistent with marijuana, the presence of which was confirmed by testing. Detective Gibbs testified that this plastic bag had a yellow tint and looked different than the bags found on the |7floorboard. The driver denied ownership of the marijuana found on the floorboard. The two backseat occupants were released on the scene.
Although both the driver and Favorite denied ownership of the marijuana on the floorboard, they were both arrested for possession of that marijuana. Neither detective saw how or when the drugs got on the floorboard, but they believed that the marijuana could have been for Favorite or for the driver because “the reach of it, and the basic constructive possession.”
A stipulation was entered into at trial regarding the testimony of Raven Barrios, who would have been qualified as an expert in chemical analysis had she been called to testify. It was stipulated that she tested the four bags and found the presence of marijuana. The gross weight of the bags was 3.7 grams. It was also provided that she tested the one bag from the driver’s wallet and confirmed the presence of marijuana. This gross weight was 1.38 grams.
On appeal, Favorite contends that this case rested solely on circumstantial evidence and was insufficient to support his conviction. He argues that, even though
the marijuana was in plain view on the floorboard next to where he was seated, it was possible he did not notice it. Favorite points out that nothing to indicate drug use was found with him, but the driver had marijuana in his wallet. He further notes that the officers did not testify that they saw more than one object exchanged at the apartment complex, but four bags of marijuana were found, and none of which was on his person. Favorite contends that he was fully cooperative; that he made no effort to conceal anything; that the officers did not see him exercise any dominion and control over the marijuana; and that there were three other passengers in the car. Favorite claims that not all reasonable hypotheses of innocent activity were eliminated.
laThe constitutional standard for testing the sufficiency of the evidence, as enunciated in Jackson v. Virginia, is whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[1] When circumstantial evidence is used to prove the commission of an offense, La. R.S. 15:438 requires that “assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence.” This is not a separate test to be applied when circumstantial evidence forms the basis of a conviction; all evidence, both direct and circumstantial, must be sufficient to satisfy a rational juror that the defendant is guilty beyond a reasonable doubt.[2]
*1063 “Circumstantial evidence is evidence of facts or circumstances from which one might infer or conclude, according to reason and common experience, the existence of other connected facts.”[3] The reviewing court is not required to determine whether another possible hypothesis of innocence suggested by the defendant offers an exculpatory explanation of events. Rather, the court must evaluate the evidence in a light most favorable to the state and determine whether the possible alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt.[4]
The credibility of witnesses presenting conflicting testimony on factual matters is within the sound discretion of the trier of fact.[5] The trier of fact shall evaluate the witnesses’ credibility, and when faced with a conflict in testimony, is free to accept or reject, in whole or in part, the testimony of any witness.[6] It is not lathe function of the appellate court to second-guess the credibility of witnesses as determined by the trier of fact or to reweigh the evidence absent impingement on the fundamental due process of law.[7]
La. R.S. 14:95(E) provides, in pertinent part, the following:
If the offender uses, possesses, or has under his immediate control any firearm, or other instrumentality customarily used or intended for probable use as a dangerous weapon, while committing or attempting to commit a crime of violence or while in the possession of or during the sale or distribution of a controlled dangerous substance, the offender shall be fined not more than ten thousand dollars and imprisoned at hard labor for not less than five nor more than ten years without the benefit of probation, parole, or suspension of sentence.
In order to prove a violation of La. R.S. 14:95(E) when a defendant is found to be in constructive possession of a firearm while simultaneously in possession of a controlled dangerous substance, the state must prove that there is a nexus between the firearm and the controlled dangerous substance.[8] “Proof of this nexus is not required where the defendant uses or has actual possession of the firearm, or has the firearm within his immediate control.”[9] In the present case, the State presented evidence that Favorite was in actual possession of the rifle, part of which was sitting on his lap, when the vehicle he was in was stopped by the officers. Favorite admitted as Detective Gibbs approached that he had a firearm, and Detective Gibbs observed it in his lap. Further, Favorite is not challenging the possession of the rifle, but, rather, he alleges he did not have possession of the marijuana found on the floorboard of the vehicle.
Possession of narcotic drugs can be established by actual physical possession or by constructive possession.[10] A determination of whether there is | insufficient “possession” of a drug to con *1064 vict depends on the particular facts of each case.[11]
A person can be found to be in constructive possession of a controlled substance if the State can establish that the person had dominion and control over the contraband, even in the absence of physical possession.[12] Although mere presence in an area where drugs are located or mere association with one possessing drugs does not constitute constructive possession, the supreme court has acknowledged several factors to be considered in determining whether a defendant exercised sufficient control and dominion to establish constructive possession, including his knowledge that drugs were in the area, his relationship with the person found to be in actual possession, his access to the area where the drugs were found, evidence of recent drug use, and his physical proximity to the drugs.[13] Further, a person may be in joint possession of a drug if he willfully and knowingly shares with another the right to control the drug.[14]
Because of where Favorite was seated in the vehicle, the jury could have found that he had knowledge of, and access to, the drugs that were found. The marijuana was located where Favorite’s feet had been and near where the barrel of the rifle, which he was holding partially in his lap, would have been positioned. Further, although there was no evidence of recent drug consumption, the detectives testified that, just prior to the stop, Favorite had engaged in a hand-to-hand transaction and received an object in return for the money he handed to the unknown individual. The detectives did not see any movements by the occupants in the car once the vehicle was stopped. Detective Johnson was covering the ^vehicle, known to have at least one weapon, and was watching the occupants closely as their hands were in the air. Although marijuana was found on the driver of the vehicle, the State presented evidence that the packaging of this marijuana was different than the packaging of the four bags of marijuana found on the floorboard. Although Detective Gibbs testified that there was no evidence that the vehicle belonged to Favorite or that he was in control of the vehicle, such does not preclude a finding that Favorite had control of the drugs found by his feet. Although four people were in the vehicle when it was stopped, Favorite was in the position closest to the marijuana and was the one seen participating in the hand-to-hand transaction just prior to the stop.
Finally, although the detectives also arrested the driver for possession of the marijuana after no one claimed ownership to it, jurisprudence recognizes joint possession.[15] This Court has affirmed a defendant’s conviction of possession in a case where the drugs were found in a clear plastic fuse box in plain view on the hump of the floorboard between the driver’s seat and the passenger’s seat. We found that the defendant, as the front seat passenger, was within an arm’s reach of the drugs and, thus, had easy and immediate access to them and concluded that, given those facts, a rational trier of fact could have found beyond a reasonable doubt that the *1065 defendant was in possession of the narcotics and that he knowingly possessed them.[16]
Based on the foregoing, we find that, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found, beyond a | ^reasonable doubt, that Favorite was guilty as charged. This assignment of error is without merit.
Favorite also argues that this case includes errors patent because the trial court failed to make rulings on his motions for acquittal and new trial before sentencing him, and, therefore, his sentence should be vacated. He contends that there were no rulings nor any waiver of sentencing delays before his sentence was imposed. The State responds that this claim is based upon an incomplete appellate court record and filed a Motion to Supplement the Record. The supplemental record showed that the motions for new trial and for acquittal notwithstanding the verdict were both denied. Defendant then waived delays for sentencing. Accordingly, this assignment of error is without merit.
Our error patent review reveals that Favorite did not receive a fine when sentenced. La. R.S. 14:95(E) provides for a fine of “not more than ten thousand dollars.” This Court has held that a statute, providing for a fine of “not more than” a specified amount, does require a mandatory fine.[17] However, we have noted that the matter is not free from doubt.[18]
This Court, while finding the omission of the imposition of a fine in such cases to be error has, as a matter of discretion, refrained from amending the defendant’s sentence to impose a fine. We find that to be the proper course of action in this case, where Favorite is represented by the Louisiana Appellate Project on appeal and appears indigent.
Finally, the commitment incorrectly reflects that the State “nolprossed” count two on February 21, 2011. According to the bill of information, the correct |isdate was February 2, 2011. The district court is directed to make the entry in the commitment reflecting this correction. Furthermore, we direct the clerk of court to transmit the original of the minute entry/commitment to the officer in charge of the institution to which Favorite has been sentenced and to the legal department of the Department of Public Corrections and Safety (DOC).
For the foregoing reasons, the conviction is affirmed. We remand this matter for correction of the minute entry/commitment as ordered.

CONVICTION AFFIRMED; REMANDED WITH INSTRUCTIONS

. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). See also, State v. Ortiz, 96-1609, p. 12 (La.10/21/97), 701 So.2d 922, 930, cert. denied, 524 U.S. 943, 118 S.Ct. 2352, 141 L.Ed.2d 722 (1998); State v. McFarland, 07-26 (La.App. 5 Cir. 5/29/07), 960 So.2d 1142, 1146, writ denied sub nom., State ex rel. McFarland v. State, 07-1463 (La.1/7/08), 973 So.2d 731.

. Ortiz, supra; McFarland, supra.

. State v. Kempton, 01-572, p. 7 (La.App. 5 Cir. 12/12/01), 806 So.2d 718, 722.

. State v. Mitchell, 99-3342 (La.10/17/00), 772 So.2d 78, 83.

. State v. Jones, 08-20, p. 7 (La.App. 5 Cir. 4/15/08), 985 So.2d 234, 240.

. Id.

. Id.

. State v. Blanchard, 99-3439, p. 10 (La.1/18/01), 776 So.2d 1165, 1174.

. Id.

. State v. Major, 03-3522, p. 7 (La.12/1/04), 888 So.2d 798, 802.

. Id.

. Id.

. State v. Toups, 01-1875, p. 4 (La.10/15/02), 833 So.2d 910, 913.

. Toups, supra (quoting State v. Trahan, 425 So.2d 1222 (La.1983)); See also, State v. Gordon, 93-1922 (La.App. 1 Cir. 11/10/94), 646 So.2d 995, 1002.

. See, State v. Smith, 257 La. 1109, 1114, 245 So.2d 327, 329 (1971); Also, e.g., State v. Ankrum, 573 So.2d 244 (La.App. 1 Cir.1990).

. State v. Flagg, 01-65 (La.App. 5 Cir. 7/30/01), 792 So.2d 133, writ denied, 01-2534 (La.9/20/02), 825 So.2d 1159.

. See, State v. Clemons, 01-1032 (La.App. 5 Cir.2/26/02), 811 So.2d 1047, writ denied, State v. Phillips, 02-0866 (La.11/22/02), 834 So.2d 972, cert. denied, 538 U.S. 1063, 123 S.Ct. 2228, 155 L.Ed.2d 1117 (2003).

.State v. Kerlec, 06-838 (La.App. 5 Cir. 4/11/07), 957 So.2d 810, 815, writ denied, 07-1119 (La.12/7/07), 969 So.2d 626.