SUSAN M. CHEHARDY, Chief Judge.
| .¿Defendant,' Mark Joseph Reader, appeals from his conviction and sentence for a third offense of driving while intoxicated. For thé Reasons that follow, we affirm defendánt’s conviction áhd sentence and. remand for.'correction of an error patent.
PROCEDURAL HISTORY
. On' September 6, 2011, the Jefferson Parish District Attorney filed a bill' of information charging defendant with a third offense of operating a vehicle while intoxicated, a violation of La. R.S. 14:98(A)(D). Defendant pled not-guilty to the charge and proceeded to a trial by jury. On April 23, 2014, a six-person jury returned a verdict of guilty as charged. On May 9, 2014, after denying defendant’s motions for new trial and post-verdict judgment of acquittal, the district court sentenced defendant to imprisonment at hard labor for two years, the first year without the benefit of probation, parole, or suspension of- sentence. The court suspended a $2,000.00 fine, and imposed various fees. Defendant’s motion to reconsider sentence was denied on July 9, 2014. This timely appeal followed.
J^FACTS
It was stipulated at trial that defendant had been twice previously convicted of driving while intoxicated in 2002 and 2006.
On May 28, 2011, defendant experienced a-stroke and was admitted to University Hospital in New Orleans. He was dis *404 charged on June 1, 2011. He was prescribed Soma and took the medicine twice a day: at 7:00 a.m. and 7:00 p.m. pursuant to his doctor’s instructions. He did not experience any side effects and was able to drive and to report to work regularly. On June 15, 2011, defendant took his Soma as usual at 7:00 a.m. and did not experience any side effects. Yet, later that day, around 2:30 p.m., he felt “woozy” while driving on Veterans Boulevard in Metairie. He pulled over for ten or fifteen minutes to regain his composure. After feeling better, he merged back onto Veterans Boulevard. As he did, a vehicle pulled alongside him and the driver accused defendant of cutting him off. They, “had a few words” and the other vehicle stayed alongside defendant as if attempting to run him off the road. To avoid a collision, defendant veered to the right;and struck the curb, blowing out his right front tire. While he tried to maintain control of the vehicle, his right rear tire struck the curb and blew out. Defendant managed to pull his vehicle into a driveway.
Around 3:00 p.m., Deputy Jeffery Navo of the Jefferson Parish Sheriffs Office was dispatched to the 3700 block of Veterans Boulevard in reference to a vehicle accident. When he arrived on the scene, the deputy observed an inoperable Ford Expedition in the driveway of a business. The vehicle appeared to have struck the curb and a garbage can before coming to rest. Both the front and rear right tires were damaged “beyond repair.” The deputy also observed defendant, the driver of the vehicle, “unsteady and unbalanced,” walking around the vehicle. Defendant explained to the deputy: “I don’t know what happened. I was coming |4out óf the driveway over there and I made a right turn and. the car kept turning and it wouldn’t stop turning and I hit this and then I hit that and I can’t stop.” Moments later, defendant offered a differing explanation, stating that he was in the right lane on Veterans Boulevard when a vehicle in the center lane swerved into his lane, cutting him off. He swerved to avoid contact with the vehicle and was forced off the road. While interacting with defendant, Deputy Navo noticed that defendant’s speech was slurred, that he was swaying back and forth, and that he was “confused about what took place.” Deputy Navo did not detect the odor of alcohol.
Defendant advised the deputy that he was not injured, but explained that he had suffered a stroke several weeks ago. Unable to determine if defendant was intoxicated or was experiencing a medical emergency, Deputy Navo contacted EMS for medical assistance. In the meantime, defendant provided the deputy with his driver’s license and registration. When asked for proof of insurance, defendant instead retrieved, and examined for an extended period of time, a document labeled “LSU Medical Health.” Defendant explained at trial that he sought to provide Deputy Navo with this medical paperwork because he wanted to be taken to University Hospital, where he had received treatment for his stroke. However, when' EMS arrived, defendant refused medical assistance. He later explained he did so because EMS could only transport him to East Jefferson General Hospital, not the hospital of his choice.
After EMS left the scene, Deputy Navo initiated a DWI investigation. The deputy asked defendant if he was taking any medications. According to the deputy, defendant stated that he was taking Diazepam and Hydrocodone and had taken each about four hours earlier; but at trial, defendant disputed that he told the deputy this. Defendant retrieved from his vehicle two pill bottles bearing these {¿prescriptions in his name. For the Dia-zepam, defendant was prescribed to take *405 three pills per day and was dispensed forty-five pills. This prescription had been filled eight days prior to the accident and only one pill was in the bottle; For the Hydrocodone, defendant was prescribed to take one pill every six hours and was dispensed ninety pills. This prescription had been filled on May 28, 2011, approximately eighteen days prior to the accident, and only one pill was in the bottle. At trial, defendant explained that he kept one pill of each in his car in case he needed the medicine while away from home. Not wanting to keep full bottles of pills in his vehicle, he left the other pills at home and kept the bottles in his car- as proof of prescription.
Based on this information, Deputy Navo suspected substance abuse and conducted a standardized field sobriety test. This is composed of the horizontal gaze nystag-mus test, the walk-and-turn test, and the one-legged stand test. Defendant did not display any indicators of intoxication during the horizontal gaze nystagmus test; however, he displayed seven out of eight possible indicators during the walk-and-turn test and four out of four possible indicators during the one-legged' stand test. Based on this performance; Deputy Navo concluded that defendant was impaired, advised him of his Miranda[1] rights, and placed him under arrest.'
Defendant was transported to the traffic office where he was interviewed and, according to Deputy Navo, again acknowledged taking Diazepam and Hydrocodone while operating a motor vehicle. With a Chemical Rights of Arrestee form, defendant was advised of his rights relating to chemical testing for intoxication. He signed the form, indicating that he understood his rights. He then signed a consent form, agreeing to provide a blood sample.
IflDr. George Behonick, an expert in forensic toxicology, tested defendant’s blood sample and found it did not contain Dia-zepam or Hydrocodone. However, Dr. Behonick did find 2.5 micrograms per milliliter of Carisoprodol and 19.9 micrograms per milliliter of Meprobamate in the sample. The common name for Cari-soprodol is Soma, a muscle relaxant; Me-probamate is a metabolite of Carisoprodol. Dr. Behonick explained Carisoprodol. is a central nervous system depressant often accompanied by such effects as dizziness, drowsiness, confusion, disorientation, a lack of sensory motor control, and slurred speech. Carisoprodol can also cause horizontal gaze nystagmus, detectable by the standardized field sobriety test. Dr. Be-honick cited a scientific study that had found a concentration of Carisoprodol and Meprobamate beyond 10 micrograms per milliliter is associated with significant impairment. In the present case, the concentration of Carisoprodol and Meproba-mate detected in defendant’s blood sample was 22.4 micrograms per milliliter. These levels, the doctor stated, “could pose a risk and could diminish the critical skills needed to operate a motor vehicle.” Indeed, Dr. Behonick reviewed the police report and found that Deputy Nova’s observations were consistent with the use of Carisoprodol. He concluded that Cariso-prodol and Meprobamate “were significant as to the causative factors in the accident.”
DISCUSSION
On appeal, defendant raises two assignments of error: (1) the district court erred in denying defendant’s challenge for cause of a juror; and (2) the evidence was insufficient to support the conviction.
When issues on appeal relate to both the sufficiency of evidence and one or *406 more trial errors, we first address the sufficiency of the evidence. See State v. Hearold, 603 So.2d 731, 734 (La.1992). In his second assignment of error, .defendant argues that the evidence was insufficient to support his conviction. He |7contends that the State failed to negate every, reasonable hypothesis of innocence, namely, that .it was reasonable for him to have struck the curb and lost control of' his vehicle- trying to avoid- a collision with an aggressive driver, rather than that he did so because he- was under the influence of narcotics.
In reviewing the sufficiency of the evidence, an appellate court must determine that the evidence, whether direct or circumstantial, or a mixture of both, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime have been proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Neal, 00-0674 (La.6/29/01), 796 So.2d 649, 657, cert. denied, 535 U.S. 940, 122 S.Ct. 1323, 152 L.Ed.2d 231 (2002); State v. Mickel, 09-0953 (La.App. 5 Cir. 5/11/10), 41 So.3d 532, 534, writ denied, 10-1357 (La.1/7/11), 52 So.3d 885.
When circumstantial evidence is used to prove the commission of an offense, La. R.S. 15:438 requires that “assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence.” State v. Favorite, 11-1075 (La.App. 5 Cir. 5/31/12), 97 So.3d 1057, 1062. This is not a separate test to be applied when circumstantial evidence forms the basis of a conviction; all evidence, both direct and circumstantial, must be sufficient to satisfy a rational juror that the defendant is guilty beyond a reasonable doubt. Id.
Circumstantial evidence is evidence of facts or circumstances from which one might infer or conclude, according to reason and common experience, the existence of other connected facts; Favorite, 97 So.3d at 1063. The reviewing court is not required to determine whether another possible hypothesis of innocence suggested by the defendant offers an exculpatory explanation of events. | RId. Rather, the court must evaluate the .eyidence in a light most favorable to the prosecution and determine whether the possible alternative hypothesis is sufficiently reasonable that a rational juror could not have found proof .of guilt beyond a reasonable doubt. Id.
The directive that the evidence be viewed in the light most favorable to the prosecution requires the reviewing court to defer to the actual trier of fact’s rational credibility calls, evidence weighing, and inference drawing. State v. Caffrey, 08-0717 (La.App. 5 Cir. 5/12/09), 15 So.3d 198, 202, writ denied, 09-1305 (La.2/5/10), 27 So.3d 297. This - deference to the fact finder does not permit a reviewing court to decide whether it believes a witness or whether the conviction is contrary to the weight of the evidence. Id. As a result, under the Jackson standard, a review of the record for sufficiency of the evidence does not require the reviewing court to determine whether the evidence at the trial established guilt beyond a reasonable doubt, but whether, upon review of the whole record, any rational trier of fact would have found guilt beyond a reasonable doubt. State v. Jones, 08-0020 (La.App. 5 Cir. 4/15/08), 985 So.2d 234, 240.
In making this determination, a reviewing court will not re-evaluate the credibility of witnesses or re-weigh the evidence. Caffrey, supra. Indeed, the resolution of conflicting .testimony rests solely with the trier of fact, who may accept or reject, in whole or in part, the *407 testimony of any witness. See State v. Bailey, 04-0085 (La.App. 5 Cir. 5/26/04), 875 So.2d 949, 955, writ denied, 04-1605 (La.11/15/04), 887 So.2d 476, cert. denied, 546 U.S. 981, 126 S.Ct. 554, 163 L.Ed.2d 468 (2005). Thus, in the absence of internal contradiction or irreconcilable conflicts with physical evidence, the testimony of one witness, if believed by the trier of fact, is sufficient to support a conviction. State v. Dixon, 07-0915 (La.App. 5 Cir. 3/11/08), 982 So.2d 146, 153, writ denied, 08-0987 (La.1/30/09), 999 So.2d 745.
In the instant case, defendant was charged with and convicted of a third offense of operating a vehicle while intoxicated, a violation of La. R.S. 14:98(A)(D). At the time of the offense, La. R.S. 14:98(A)(l)(c) provided in pertinent part: “The crime of operating a vehicle while intoxicated is the- operating of any motor vehicle ... when [t]he operator is under the influence of any controlled dangerous substance listed in Schedule I, II, III, IV, or V as set forth in R.S. 40:964[.]”
In order to convict a defendant of driving while intoxicated, the State must prove that the defendant was operating a vehicle while under the influence of alcohol or drugs. State v. Vidal, 04-1139 (La.App. 5 Cir. 3/29/05), 901 So.2d 484, 487. To convict a defendant of a third offense of driving while intoxicated, the State must further-prove that the defendant had two other valid convictions. See La. R.S. 14:98(D). In the present case, it is not disputed that defendant was operating a vehicle or that he had two prior DWI convictions. He stipulated at trial to two predicate DWI convictions and admitted to operating a motor vehicle.' Accordingly, the State needed only to prove that defendant was under the influence of a controlled dangerous substance while operating the vehicle.
Intoxication is defined as the impairment, however slight, to the ability of a person to operate an automobile. State v. Delanueville, 11-0379 (La.App. 5 Cir. 2/14/12), 90 So.3d 15, 20, writ denied, 12-0630 (La.9/21/12), 98 So.2d 325. This impairment need not be complete but only to the degree that the influence causes a person to operate his car in á manner different from that in which it would be operated by an ordinarily cautious and prudent person. Id.
Imlntoxication, with its attendant behavioral manifestations, is an observable condition about which a witness may testify, and some behavioral signs, independent of any scientific test, are sufficient to sup-, port a charge of driving while intoxicated. Delanuemlle,' supra. This Court has recognized that the failure to pass a field sobriety, test is sufficient to support a conviction of driving while intoxicated, where the failure to pass a field sobriety test is an officer’s subjective determination. State v. Richoux, 98-374 (La.App. 5 Cir. 5/26/98), 714 So.2d 241, 244.
At trial in the instant case, defendant admitted to taking Soma, a controlled dangerous substance,[2] on the morning of the accident. "Upon encountering defendant, Deputy Nova observed that defendant was “unsteady and unbalanced,” was swaying' back and forth, was “confused about what took place,” and was slurring his speech. Defendant then failed the walk-and-tum test and the one-legged stand test, displaying eleven out of twelve indicators of intoxication. Dr. Behonick, an expert in forensic toxicology, found that Deputy Nova’s observations were consistent with the use of Soma. Indeed, *408 defendant’s blood test confirmed the presence of Carisoprodol and Meprobamate at a combined concentration level of 22.4 micrograms per milliliter. According to the doctor’s expert testimony, studies have shown that any combined concentration of these substances beyond 10 micrograms per milliliter is associated with significant impairment. Dr. Behonick concluded that Carisoprodol and Meprobamate “were significant as to the causative factors in the accident.”
Defendant presented to the jury his alternative hypothesis of innocence; however, in returning a guilty verdict, the jury, as the trier of fact, evidently gave more credence to the State’s version and rejected defendant’s. The resolution of ^^conflicting testimony rests solely with the trier of fact; we will not re-evaluate the credibility of witnesses or re-weigh the evidence on appeal. Accordingly, viewing the evidence in the record before us in the light most favorable to the prosecution, we find it was sufficient to convince any rational trier of fact beyond a reasonable doubt that relator committed a third offense of operating a motor vehicle while intoxicated.
This assignment of error is without merit.
In defendant’s first assignment of error, he argues that the district court erred in denying his challenge for cause as to prospective juror Ashley Zito, a close friend of the assistant district attorney’s family, who consistently maintained that this relationship would unduly influence her. Defendant contends that his conviction must be reversed since Ms. Zito was permitted to remain in the jury venire despite her inability to be fair and impartial.
At the beginning of voir dire, in response to the court’s question whether any prospective jurors knew any of the witnesses or court personnel, Ms. Zito responded that her parents and the parents of the assistant district attorney, Mr. Jody Fortunato, “are good friends and traveled together.” She explained that she sees Mr. Fortunato a “couple of times” a year and added: “I know him just because we’re probably around the same age.” When asked whether she could be fair and impartial despite her acquaintance with Mr. Fortunato, Ms. Zito replied: “I mean, I hope I can be.”
In response to defense counsel’s questioning, Ms. Zito stated: “I’m honest so I think I would be able to be fair and give a fair ruling.” But when asked if she could “make it any stronger than T hope’ and T think,’ ” she responded: “Not really.” She also stated that she “hoped” she would not and would try not to give the State “a few extra points.” And while Ms. Zito expressed hope that she could 112be fair and impartial, she acknowledged that she could not say so with any degree of certainty. She also stated to the court that she “probably” could not be fair to both sides because of her acquaintance with Mr. For-tunato. The court denied the defense’s challenge for cause of Ms. Zito.
Voir dire proceeded and Ms. Zito was subjected to questioning by the State. Following this, the State moved to strike Ms. Zito for cause on the basis that she would hold the State to a higher burden of proof. The court granted this challenge and Ms. Zito was struck for cause.
The Sixth Amendment to the United States Constitution guarantees the accused the right to trial by an impartial jury. State v. Munson, 12-327 (La.App. 5 Cir. 4/10/13), 115 So.3d 6, 12, writ denied, 13-1083 (La.11/22/13), 126 So.3d 476. In addition, La. Const. Art. I, § 17 guarantees the accused the right to full voir dire examination of prospective jurors and the right to *409 challenge those jurors peremptorily. State v. Milton, 13-0672 (La.App. 6 Cir. 5/14/14), 142 So.3d 157, 168. La. C.Cr.P. art. 797 sets forth the grounds for which a juror may be challenged for cause,
In ruling on challenges for cause, the trial judge is vested with broad discretion; and his ruling will be reversed only when a review of the entire voir dire reveals that the judge’s exercise of discretion was arbitrary and unreasonable with resultant prejudice to the accused. Munson, 115 So.3d at 12. The trial judge is vested with broad discretion in ruling on challenges for cause because the judge has the benefit of seeing the facial expressions and hearing the vocal intonations of the members of the jury venire as they respond to questioning. State v. Anthony, 98-0406 (La.4/11/00), 776 So.2d 376, 392, cert. denied, 531 U.S. 934, 121 S.Ct. 320, 148 L.Ed.2d 258 (2000).
11sOn appeal, to prove an error warranting reversal of both the conviction and sentence, a defendant must show that he exhausted all of his peremptory challenges and that the trial court erroneously denied a challenge for cause. State v. Mickel, 07-0047 (La.App. 5 Cir. 5/29/07), 961 So.2d 516, 522, writ denied, 07-1422 (La.1/7/08), 973 So.2d 732. Further, in Louisiana, a defendant must use one of his peremptory challenges curatively to remove the juror, thus reducing his remaining peremptory challenges, or waive any complaint on appeal. State v. Blank, 04-0204 (La.4/11/07), 955 So.2d 90, 113, cert. denied, 552 U.S. 994, 128 S.Ct. 494, 169 L.Ed.2d 346 (2007).
In the instant case, Ms. Zito was struck for cause pursuant to the State’s challenge. Consequently, the defense was not forced to utilize a peremptory challenge' to remove Ms. Zito and therefore did not suffer prejudice. Accordingly, defendant is not entitled to relief.
This assignment of error is without merit.

ERRORS PATENT

The record was reviewed for errors patent in accordance with La. C.Cr.P., art. 920; State v. Oliveaux, 312 So.2d 337 (1975); and State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990). One matter requires corrective action;
The State of Louisiana Uniform Commitment Order reflects the incorrect adjudication date as May 23, 2014. The record indicates the adjudication date was April 23, 2014. Accordingly, we remand this matter for correction of the Uniform Commitment Order regarding the adjudication date. See State v. Lyons, 13-564 (La.App. 5 Cir. 1/31/14), 134 So.3d 36, 41, writ denied, 14-0481 (La.11/7/14), 152 So.3d 170. We further direct the Clerk of Court for the 24th Judicial District Court to transmit the original of the corrected Uniform Commitment Order to the officer in charge of the institution to which defendant has been sentenced and to |14the legal department of the Louisiana Department of Public Safety and Corrections. See La. C.Cr.P. art. 892(B)(2); State ex rel. Roland v. State, 06-0244 (La.9/15/06), 937 So.2d 846.

AFFIRMED; REMANDED FOR CORRECTION OF COMMITMENT.

. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

. At the time of'the offense, Ckrisoprodol and Meprobamate were listed as a Schedule IV controlled dangerous substances. See La. R.S. 40:964(2011).-