CHAISSON, J.
hln this appeal, defendant, Rockey Burnham, challenges the sufficiency of the evidence used to convict him of fourth offense driving while intoxicated. For the reasons set forth herein, we affirm defendant’s conviction and sentence and remand the matter with instructions.
*472 PROCEDURAL BACKGROUND
On June 9, 2015, the Jefferson Parish District Attorney filed a bill of information charging defendant with fourth offense operating a vehicle while intoxicated, having received the benefit of parole, probation, or suspension of sentence on a previous fourth offense driving while intoxicated conviction, in violation of La. R.S. 14:98(A) and La. R.S. 14:98.4(C). At the arraignment, defendant pled not guilty.
The matter proceeded to trial before a twelve-person jury on April 18, 2016. After considering the evidence presented, the jury, on April 20, 2016, found defendant guilty as charged. Defendant thereafter filed a motion for post-verdict judgment of acquittal and a motion for new trial, in which he alleged generally that “there was insufficient evidence from which to convict.” On May 6, 2016, the trial court denied defendant’s two motions.
After defendant waived sentencing delays, the trial court sentenced him to imprisonment at hard labor for twenty years without the benefit of parole, probation, or suspension of sentence. Defendant thereafter filed a motion to reconsider sentence, which the trial court denied. Defendant now appeals.
FACTS
On the morning of April 28, 2015, Louis Dassau parked his commercial shrimping vessel, “Cajun Star,” at a dock at Dean Seafood Plant in Bayou Rigaud near Grand Isle, Louisiana. Mr. Dassau planned to go fishing that day, and defendant, who had worked on Mr. Dassau’s shrimping boat as a deckhand on and|2 off since 2007, was helping Mr. Dassau get the boat ready. Needing supplies for the day, Mr. Dassau positioned his boat in the crowded marina while defendant tied it to the pier, and Mr. Dassau headed to the store. Before he left, Mr. Dassau asked defendant, who had never previously piloted the vessel, to move the boat approximately fifty feet so that the boat could be loaded with ice.
At trial, Greg Blanchard, who helps to manage Dean Seafood, testified that he was standing on the dock as defendant moved Mr. Dassau’s boat. Mr. Blanchard speculated that the wind “pulled the bow out,” and therefore, as defendant turned the boat, he did not have enough room. Mr. Blanchard screamed at defendant to slow down and stop. He then saw defendant run to the back deck of the boat and pull the control lever backwards to go in reverse. As the lever controls had been improperly installed, the boat moved forward and hit another vessel and the dock. Mr. Blanchard and others grabbed a rope and tied the boat back to the dock.[1]
Sergeant Ezekial Talbert, Jr., an agent with the Louisiana Department of Wildlife and Fisheries, responded to the scene after receiving a call from the Coast Guard to investigate a possible driving while intoxicated violation following a boating accident. Upon arriving at the scene, Sergeant Talbert spoke to defendant who advised him that he was operating the vessel at the time of the incident. According to Sergeant Talbert, defendant did not smell of alcohol, but he did have difficulty maintaining focus on the conversation. Sergeant Talbert recalled that as he spoke to defendant, defendant paused, stared, and asked the agent to repeat his questions. Sergeant Talbert further observed that defendant mumbled, slurred his words, and was “bor *473 derline incoherent.” In addition, Sergeant Talbert described that defendant was swaying and unsteady, unable to maintain his balance, and | ¡¡leaned against a post to stay upright. Based on his observations, Sergeant Talbert suspected that defendant was under the influence of some intoxicating substance and thereafter advised defendant of his rights. During their interaction, defendant informed Sergeant Talbert that he was a recovering drug addict and showed him a prescription for Suboxone. After ascertaining that defendant had not been injured in the accident, Sergeant Tal-bert began to administer the field sobriety testing. First, he performed the horizontal gaze nystagmus test and observed the involuntary jerking of defendant’s eyes, which occurs when an individual is intoxicated or under the influence. However, Sergeant Talbert was concerned about defendant’s safety and did not have him perform the one-legged stand test or the "walk and turn test as defendant “kept falling over” and was unable to maintain his balance. Based on his observations, Sergeant Talbert believed that defendant was under the influence, arrested him for driving while intoxicated, and transported him to the police station in Grand Isle.
At the police station, defendant executed an arrestee’s rights form relating to chemical testing, signed a consent form to give a blood sample, and was overall very cooperative. While there, Sergeant Talbert had defendant blow into an Intoxilyzer machine that recorded all zeroes, thereby confirming the agent’s belief that defendant was not intoxicated from consuming alcohol. In addition, defendant gave a blood sample and attempted to provide a urine sample but was unable to do so.
At trial, Cate Sanford, a crime lab analyst in the toxicology division at the Louisiana State Police Crime Lab, testified that she performed a toxicological analysis on defendant’s blood sample and reported that defendant’s blood contained diazepam, nordiazepam, and methamphetamine; however, Suboxone, which defendant claimed that he had taken, was not found in defendant’s blood.
^SUFFICIENCY OF THE EVIDENCE
In his sole assignment of error on appeal, defendant argues that the trial court erred in denying his motion for post-verdict judgment of acquittal since-the evidence was insufficient for any rational trier of fact, viewing the evidence in the light most favorable to the .prosecution, to find the elements of the crime were proven beyond a reasonable doubt.[2] Defendant points to several factors to support this argument. Specifically, he asserts that he was suffering from a debilitating back condition that required him to take prescription medication, and his pain, not alcohol consumption, caused his inability to complete the field sobriety tests. Further, defendant maintains that the boat’s incorrectly installed controls caused him to hit the dock and another vessel and that the windy weather conditions contributed to the accident. Defendant argues that the sole evidence presented against him was the agent’s testimony about his slurred speech and his inability to maintain his balance, and therefore, the evidence was insufficient to convict him. We find no merit to these arguments.
In reviewing the sufficiency of the evidence, an appellate court must determine if the evidence, whether direct or *474 circumstantial, or a mixture of both, viewed in the light most favorable to the prosecution, was sufficient to convince a rational trier of fact that all of the elements of the crime have been proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Reeder, 15-68 (La.App. 5 Cir. 8/25/15), 189 So.3d 401, 406. Under the Jackson standard, a review of the record for the sufficiency of the evidence does not require the court to ask whether it believes that the evidence at the trial established guilt beyond a reasonable doubt. Rather, the reviewing court is required to consider the whole record and determine whether any rational trier of | ¿fact could have found guilt beyond a reasonable doubt. State v. Jones, 08-20 (La.App. 5 Cir. 4/15/08), 985 So.2d 234, 240.
In making this determination, a reviewing court will not re-evaluate the credibility of witnesses or re-weigh the evidence. Indeed, the resolution of conflicting testimony rests solely with the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness. State v. Reeder, 189 So.3d at 406-07. Thus, in the absence of internal contradiction or irreconcilable conflicts with physical evidence, the testimony of one witness, if believed by the trier of fact, is sufficient to support a conviction. State v. Dixon, 07-915 (La.App. 5 Cir. 3/11/08), 982 So.2d 146, 153, writ denied, 08-0987 (La. 1/30/09), 999 So.2d 745.
In the present case, defendant was convicted of fourth offense operating a ve-hide while intoxicated, having received the benefit of parole, probation, or suspension of sentence on a previous fourth offense driving while intoxicated conviction. At the time of the offense, the crime of driving while intoxicated was defined, in pertinent part, as “the operating of any motor vehicle, aircraft, watercraft, vessel, or other means of conveyance when ... the operator is under the influence of any controlled dangerous substance listed in Schedule I, II, III, IV, or V as set forth in R.S. 40:964.” See La. R.S. 14:98(A)(l)(c).
Thus, in order to convict a defendant of driving while intoxicated, the State must prove that the defendant was operating a vehicle and that the defendant was under the influence of alcohol or drugs. State v. Vidal, 04-1139 (La.App. 5 Cir. 3/29/05), 901 So.2d 484, 487. To convict a defendant of a fourth offense driving while intoxicated, the State must also show that the defendant had three other valid convictions. State v. Delanueville, 11-379 (La.App. 5 Cir. 2/14/12), 90 So.3d 15, 20, writ denied, 12-630 (La. 9/21/12), 98 So.3d 325. In the present case, there is no dispute that defendant was operating a vehicle and that he had three priofl fi driving while intoxicated convictions.[3] Accordingly, the State needed only to prove that defendant was under the influence of a controlled dangerous substance.[4]
Intoxication is defined as the impairment, however slight, to the ability of a person to operate a motor vehicle. The impairment need not be whole but only to the extent that the influence caused a per *475 son to operate his vehicle in a way different from that in which it would be operated by an ordinarily cautious and prudent person. State v. Reeder, 189 So.3d at 407.
The jurisprudence has established that intoxication with its attendant behavioral manifestations is an observable condition about which a witness may testify, and some behavioral signs, independent of any scientific test, are sufficient to support a charge of driving while intoxicated. The behavioral manifestations which are sufficient to support a charge of driving while intoxicated must be determined on a case-by-case basis. State v. Davis, 13-313 (La.App. 5 Cir. 10/30/13), 128 So.3d 1195, 1202, writ denied, 13-2748 (La. 5/16/14), 139 So.3d 1023.
In the present case, the jury was presented with conflicting testimony about defendant’s condition surrounding the time of the incident. According to Sergeant Tal-bert, when he first encountered defendant at the dock, defendant did not smell of alcohol, but he did have difficulty maintaining focus on the conversation. Sergeant Talbert recalled that as he spoke to defendant, defendant paused, stared, and asked the agent to repeat his questions. Sergeant Talbert further observed that defendant mumbled, slurred his words, and was “borderline incoherent.” In addition, Sergeant Talbert described that defendant was swaying and unsteady, unable to maintain his balance, and leaned against a post to stay upright. Sergeant |7Talbert further testified that he performed the horizontal gaze nystagmus test on defendant and observed the involuntary jerking of his eyes, which occurs when an individual is intoxicated or under the influence. However, Sergeant Talbert was concerned about defendant’s safety and did not have defendant perform the one-legged stand test or the walk and turn test as defendant “kept falling over” and was unable to maintain his balance.
Agent Michael Marques, a senior sergeant with the Louisiana Department of Wildlife and Fisheries who assisted in the investigation of defendant, also testified at trial for the State. While at the police station, Agent Marques observed that defendant’s speech was slurred, his eyes were droopy, and he could not walk that well. In addition to this testimony regarding defendant’s condition, the State also produced evidence that defendant’s blood contained methamphetamine, a Schedule II controlled dangerous substance, but not Suboxone, the prescription medicine that defendant claimed he had taken.
After the State rested, defendant called several witnesses to attempt to show that he was not under the influence of a controlled dangerous substance at the time of the boating accident. Mr. Dassau, the owner of the boat, testified that on the day of the incident, defendant, whom he had known for about fifteen years, seemed to be seaworthy and did not appear intoxicated. Further, he maintained that defendant “always has balance issues due to a broken back.” He also testified about mechanical problems with his boat that made it difficult to operate. In particular, Mr. Dassau explained that he does the mechanical work on the boat himself and admitted that when he installed the Morris controls, which move the boat forward and backwards and control the speed of the engine, he installed the lever backwards. As a result, when the lever was pushed forward, the boat actually moved in reverse and vice versa. Mr. Dassau also testified that at the time of the accident, the boat was about one quart low on steering oil.
|sMr. Greg Blanchard, who helped manage Dean Seafood, testified that he was standing on the dock when defendant moved Mr. Dassau’s boat. He asserted *476 that boats frequently hit the dock and speculated that the wind had “pulled the bow out” when defendant untied the boat to move it. He recalled that as defendant turned the boat, he did not have enough room. He screamed at defendant to slow down and stop but then saw defendant run to the back deck of the boat and pull the lever backwards. The boat then moved forward and hit another vessel.
Lance Santiny, a fireman and ambulance driver with the Grand Isle Fire Department, testified that he spoke to defendant at the police station before the blood sample was drawn. Mr. Santiny knew defendant his whole life and has seen defendant intoxicated in the past. He testified that on April 28, 2015, defendant was not incoherent and did not appear to be under the influence of any alcohol or pharmaceutical substance. Lastly, Terry Blanchard, a paramedic with the Grand Isle Emergency Service who drew blood from defendant, testified that defendant was cooperative, his words were not slurred or incoherent, and he did not appear to have trouble standing.
In the present case, the jury heard the testimony from both the State and the defense witnesses, and by its verdict, obviously afforded more credibility to the testimony'of the State witnesses. The evidence presented at trial clearly supports the jury’s credibility determinations. We particularly note the testimony of State witnesses that defendant’s speech was slurred and was “borderline incoherent,” that defendant was unsteady and unable to maintain his balance, and that defendant’s eyes involuntarily jerked during the horizontal gaze nystagmus test. Further, defendant’s blood sample revealed the presence of methamphetamine in his system. Accordingly, viewing the evidence in the light most favorable to the prosecution, we find that any rational trier of fact could have found beyond a reasonable doubt that defendant was guilty of fourth offense driving while! 3 intoxicated. Thus, the trial court did not err in denying defendant’s post-verdict judgment of acquittal.
ERRORS PATENT REVIEW
We have reviewed the record for errors patent, according to La. C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La. 1975); and Slate v. Weiland, 556 So.2d 175 (La. App. 5th Cir. 1990). We first note that defendant’s sentence is illegally lenient because the trial court failed to impose the mandatory fine of five thousand • dollars set forth in La. R.S. 14:98.4(C). An illegal sentence may be corrected at any time by an appellate court on review. See La. C.Cr.P. art. 882. However, this authority is permissive rather than mandatory. State v. Davis, 128 So.3d at Í204. Since defendant is apparently indigent, as reflected by his representation in this matter by the Louisiana Appellate Project, we decline to order the imposition of the mandatory fíne. See State v. Robinson, 15-610 (La.App. 5 Cir. 1/27/16), 185 So.3d 212, 215.
Next, we note a discrepancy between the minute entry/commitment and the sentencing transcript. Specifically, the minute entry/commitment provides that defendant was advised his “Guilty Plea can be used to enhance the penalty of a subsequent offense,” whereas the sentencing transcript correctly provides that “[a]ny subsequent convictions may carry an enhanced penalty as a result of this conviction.” To ensure accuracy in the record, we remand the matter to the district court to correct the minute entry/commitment to reflect that defendant’s conviction could be used to enhance the penalty of a subsequent offense. See State v. Rivet, 01-353 (La. App. 5 Cir. 9/25/01), 798 So.2d 219, 227.
*477 Lastly, we note an error in the State of Louisiana Uniform Commitment Order. The Uniform Commitment Order reflects that defendant’s sentence “shall be concurrent with any or every sentence the offender is now serving.” However, neither the transcript nor the minute entry/commitment indicates that the trial court ordered defendant’s sentence to run concurrently with any other sentence he is serving. Therefore, we remand the matter for correction of the Uniform Commitment Order to delete the provision relating to the concurrent nature of defendant’s sentence. We further direct the Clerk of Court to transmit the original of the corrected Uniform Commitment Order to the officer in charge of the institution to which defendant has been sentenced and the Department of Corrections’ Legal Department. State v. Robinson, 185 So.3d at 216.
Accordingly, for the reasons set forth herein, we affirm defendant’s conviction and sentence and remand the matter with instructions.
AFFIRMED AND REMANDED

. At trial, the testimony indicated that Mr. Dassau does the mechanical work on the boat himself. When he installed the Morris controls, which move the boat forward and backwards and control the speed of the engine, he installed the lever backwards. As a result, when the lever was pushed forward, the boat actually moved in reverse and vice versa.

. - Notably, the proper procedural vehicle for raising the issue of the sufficiency of the evidence is a motion for post-verdict judgment of acquittal. La. C.Cr.P. art. 821; State v. Lande, 06-24 (La.App. 5 Cir. 6/28/06), 934 So.2d 280, 289 n.18, writ denied, 06-1894 (La. 4/20/07), 954 So.2d 154.

. At trial, the State and defendant stipulated that on April 28, 2015, defendant was in control and operation of the vessel. The parties also stipulated that defendant had three prior driving while intoxicated convictions and had received the benefit of parole, probation, or suspension of sentence on a previous fourth offense driving while intoxicated conviction.

. Methamphetamine is a Schedule II controlled dangerous substance. See La. R.S. 40:964. At trial, the State and defendant stipulated that methamphetamine was a controlled dangerous substance that was not obtainable by a prescription.