LILJEBERG, J.
| defendant appeals his conviction and sentence for manslaughter. For the following reasons, we affirm. We also remand to the trial court for correction of an error patent.
FACTS AND PROCEDURAL HISTORY
Defendant, Ali Batiste, was charged by-indictment with the second degree murder of Kyrian Gray, a violation of La. R.S. 14:80.1. Defendant pleaded not guilty.[1] After waiving his right to a trial by jury, a bench trial was held. The trial court found defendant guilty of the lesser included offense of manslaughter, a violation of La. R.S. 14:31. Defendant was sentenced to ten years imprisonment in the Department of Corrections.
At trial, Sergeant Michelle Piearson of the St. John Sheriffs Office testified that on May 25, 2013, she and Deputy Steve Dailey were dispatched to 2509 Amy Drive in LaPlace, Louisiana, in reference to a noise complaint. At the location, a graduation party was coming to an end, so Sergeant Piearson and Deputy Dailey remained in the area to ensure the safe departure of the party goers. Approximately 20 to 30 minutes after their arrival, they observed a group of individuals running toward them, stating that there had been a shooting. Sergeant Pierson had not heard any gunshots at the time she was approached by the group, but shortly thereafter she heard “one pop” and then “a series of 2, 3 more pops.” The officers went to the scene of the shooting where they discovered a black male, later identified as Kyrian Gray, laying face up near a fence.
Julius Narcisse, who is defendant’s cousin, testified that on the night of May 25, 2013, he was with Shyheim Gregoire at a party which was broken up by the police. Julius testified that when he left the party, he waited with Shyheim and defendant for Aaron Gregoire and Nathaniel Gregoire to pick them up. When they Larrived, Aaron was driving and Nathaniel was in the front passenger seat. Defendant got in the backseat behind Aaron, Shyheim got in the backseat behind Nathaniel, and Julius sat in the rear middle seat.
The vehicle was in stop-and-go traffic, moving slowly due to the number of vehicles leaving the party. According to Julius, while they were stopped in the street due to traffic, the victim “crouched down” and “ran” up to their vehicle. The victim pulled on the rear passenger-side door, but was unable to open it because Shyheim had locked it. After pulling on the door handle, Julius testified that the victim stood up and reached down to his side. Julius stated that he felt “threatened” and “afraid,” so he ducked down, While his head was down, he heard gunshots coming from both inside and outside of the vehicle. Julius stated that defendant fired the gunshot that he heard from inside the vehicle, which Julius believed saved their lives. After the shooting, they fled the scene.
Julius also testified that a few months prior to this shooting, he was involved in an altercation with the victim; however, defendant was unaware of the altercation. Julius also stated that he had previously seen the victim in a rap video with a gun and acknowledged that the victim is a known member of the “RNIC” gang. The victim’s juvenile records were also admitted into evidence, establishing that approximately five or six months prior to the instant shooting, the victim entered a guilty plea to disturbing the peace by *1031 fighting, and the court noted there was a weapon involved.
Brentwood Howard, a bystander and friend of the victim, testified that from his location “up the street” he saw the victim pull at the door handle of the vehicle while standing by the passenger side door. Brentwood testified that he knew the victim very well, was with the victim at the party on the night he was murdered, and confirmed that the victim did not have a weapon on him that evening.
IsDale Young, who is also defendant’s cousin, testified that he was with defendant at a party in 2012 when he was involved in an altercation with the victim. Dale stated that during the altercation the victim punched him, which resulted in a chipped tooth and a cut eye.
Defendant testified he and the victim knew one another from playing recreational football. He testified that they were on good terms until the fight with his cousin, Dale. Defendant confirmed that before the shooting incident on May 25, 2013, he had never gotten into a fight with the victim.
Defendant recalled that on the night of the shooting, while leaving the graduation party, he and the victim made eye contact but did not exchange words, although he felt “uneasy” believing the victim was “up to something.” After meeting up with Shy-heim and Julius and entering Aaron’s car, defendant testified that the victim ran up to the rear passenger side door of the car and attempted to “force his way in.” According to defendant, Shyheim held the door handle while the victim appeared to “attack” Shyheim through the partially opened window. Defendant explained that when Shyheim finally managed to lock the door, the victim reached for his waist and grabbed a gun. Defendant fired one shot at the victim because he feared that he or one of his friends was going to be killed by the victim. Defendant further stated that he heard three additional gunshots after he fired his weapon and while the victim was running away from the car. Lastly, defendant testified that he had seen the victim on prior occasions in photographs as well as rap videos with a gun.
On the day after the shooting, Detective Maurice Rodriguez of the St. John’s Sheriffs Office interviewed occupants of the vehicle, including Aaron Gregoire, Nathaniel Gregoire, Shyheim Gregoire, and Julius Narcisse. Detective Rodriguez noted that their statements were consistent in that they indicated the victim approached their vehicle and pulled on the rear passenger-side door handle. |4Shyheim explained to Detective Rodriguez that he kept his hand on the door handle to prevent it from opening and that defendant then shot at the victim one time before they fled the scene. Detective Rodriguez noted that in their statements, none of the passengers indicated that there was “a threat or imminent threat towards the vehicle” or themselves, or that “they were scared in any way.” All of their statements further confirmed that defendant was the person who shot the victim while defendant was seated in the backseat behind the driver.
Three bystanders, Chad Wilson, Tevon Wilson, and Brentwood Howard, also provided statements indicating that the victim approached the vehicle in a non-threatening manner just prior to being shot. According to Detective Rodriguez, Chad indicated that defendant and the victim were seen at one point standing outside the vehicle and there appeared to be a confrontation, or a near confrontation, prior to defendant entering the vehicle. Chad further told Detective Rodriguez that the victim punched the “front passenger.” Meanwhile, Brentwood stated that there may have been “tension” between defendant and the victim based on the rivalry between the cities they live in.
*1032 LAW AND DISCUSSION
On appeal, defendant contends that the evidence was insufficient to support his conviction of manslaughter. Defendant does not contest that he fired his gun at the victim and caused his death. However, he asserts that the State failed to prove beyond a reasonable doubt that he did not act in self-defense. Defendant contends the evidence established a prior history of violence by the victim, that the victim initiated the confrontation by aggressively approaching the vehicle defendant was in and forcefully pulling at the door handle in an attempt to enter the vehicle, and that the victim was observed with a firearm, proving defendant had a reasonable belief that his life and the lives of the occupants in the vehicle were in imminent danger of death or serious harm.
|sThe State responds that it presented evidence through eyewitness testimony, that when viewed together, proved defendant was the aggressor, and as a result, not entitled to a claim of self-defense.
Defendant’s theory of self-defense was presented to the trial judge throughout the trial. The trial judge rejected defendant’s theory that the homicide was justified and found defendant guilty of the lesser included offense of manslaughter. The trial judge noted that she considered defendant’s theory of self-defense, but she rejected it after considering the evidence presented. She found that the evidence did not establish that defendant’s belief that he was in imminent danger of losing his life or sustaining great bodily harm was reasonable. Thus, the trial judge stated she considered the lesser included offenses available and found the evidence supported, beyond a reasonable doubt, a conviction for manslaughter under La. R.S. 14:31(A)(2).
The constitutional standard for testing the sufficiency of the evidence, as enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L,Ed.2d 560 (1979), is “whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.” See State v. Ortiz, 96-1609 (La. 10/21/97), 701 So.2d 922, 930, cert. denied, 524 U.S. 943, 118 S.Ct. 2352, 141 L.Ed.2d 722 (1998); State v. Smith, 12-247 (La.App. 5 Cir. 12/11/12), 106 So,3d 1048, writ denied, 13-0494 (La. 7/31/13), 118 So.3d 1120. Both the direct and circumstantial evidence must be sufficient to support the conclusion that the defendant is guilty beyond a reasonable doubt. Smith, 12-247 at 6, 106 So.3d at 1053; State v. Harrell, 01-841 (La.App. 5 Cir. 2/26/02), 811 So.2d 1015, 1019.
It is not the function of the appellate court to assess credibility or reweigh the evidence; rather, a reviewing court must consider the whole record, and determine whether a rational trier of fact would have found guilt beyond a | ^reasonable doubt. State v. Williams, 98-1146, p. 10 (La.App, 5 Cir. 6/1/99), 738 So.2d 640, 648, writ denied, 99-1984 (La. 1/7/00), 752 So.2d 176; State v. Juluke, 98-0341 (La. 1/8/99), 725 So.2d 1291. When the trier of fact is faced with conflicting testimony, the weight of the testimony lays solely with the jury or judge, who may accept or reject, in whole or in part, the testimony of any witness. State v. Williams, 05-59 (La.App, 5 Cir. 5/31/05), 904 So.2d 830, 833; State v. Bradley, 03-384 (La.App. 5 Cir. 9/16/03), 858 So.2d 80, 84, writ denied, 03-2745 (La. 2/13/04), 867 So.2d 688.
A reviewing court is not required to determine whether another possible hypothesis of innocence suggested by a defendant offers an exculpatory explanation *1033 of events. State v. Mitchell, 09-996, p. 8 (La.App. 5 Cir. 5/25/10), 40 So.3d 1122, 1127, writ denied, 10-1557 (La. 10/21/11), 73 So.3d 370. Rather, the reviewing court must determine whether the possible alternative hypothesis is sufficiently reasonable that a rational trier of fact could not have found proof of guilt beyond a reasonable doubt. Id.
In the instant case, defendant does not deny that he shot and killed the victim but rather contends he acted in self-defense. When a defendant in a homicide prosecution claims self-defense, the burden is on the State to prove beyond a reasonable doubt that the defendant did not act in self-defense. State v. Reed, 11-507 (La. App. 5 Cir. 2/14/12), 88 So.3d 601, 607, writ denied, 12-644 (La. 9/14/12), 97 So.3d 1014. The relevant inquiry on appeal is whether a rational fact-finder, after viewing the evidence in the light most favorable to the prosecution, could have found, beyond a reasonable doubt, that the homicide was not committed in self-defense. State v. Cassard, 01-931, p. 8 (La.App. 5 Cir. 2/26/02), 811 So.2d 1071, 1076, writ denied, 02-0917 (La. 12/19/02), 833 So.2d 327.
A homicide is justifiable “[w]hen committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving |7great bodily harm and that the killing is necessary to save himself from that danger.” La. R.S. 14:20(A)(1). The fact that an offender’s conduct is justifiable, although otherwise criminal, constitutes a defense to prosecution for any crime based on that conduct. La. R.S. 14:18; State v. Sparkman, 13-640 (La.App. 5 Cir. 2/12/14), 136 So.3d 98, 106, writ denied, 14-0477 (La. 11/26/14), 152 So.3d 897.
The determination of a defendant’s culpability rests on a two-fold test: 1) whether, given the facts presented, the defendant could reasonably have believed his life to be in imminent danger; and 2) whether deadly force was necessary to prevent the danger. State v. Sinceno, 12-118 (La.App. 5 Cir. 7/31/12), 99 So.3d 712, 720, writ denied, 12-2024 (La. 1/25/13), 105 So.3d 713. The fact-finder determines whether the State negated self-defense beyond a reasonable doubt. State v. Griffin, 14-450, p. 6 (La.App. 5 Cir. 12/16/14), 167 So.3d 31, 38-39, writ denied, 15-0148 (La. 11/20/15), 180 So.3d 315.
In the instant case, the evidence established that on the day of the murder, defendant and his friends, Julius and Shy-heim, were leaving a graduation party which the victim had also attended. At one point, glances were exchanged among defendant and the victim, but no words were spoken. Outside of the party, Aaron and Nathaniel arrived to pick up defendant, Julius, and Shyheim. The testimony is consistent in that once the occupants were inside the vehicle, the victim approached the rear passenger-side door where Shy-heim was seated and began to pull on the door handle. The manner in which the victim approached the vehicle, as well as the force exerted by the victim when pulling on the door handle varies between the witnesses; however, it was established that the victim was unable to gain entry into the locked car. Detective Rodriguez testified that after obtaining statements from the occupants of the vehicle, none of the passengers indicated' there was “a threat or imminent threat towards the vehicle” or its occupants or that “they were seared in any way.”
|RAt trial, defendant explained that he shot the victim after he pulled at the passenger-side door handle, because he saw the victim reach toward his waist and grab a gun. He testified that he shot once at the victim through the passenger side window because he feared for his life. However, *1034 the only testimony that supports defendant’s theory of self-defense is his own self-serving statement and that of his cousin, Julius, who changed portions of his testimony on the day of trial. It was not until trial that Julius testified that he felt “threatened” and “afraid” for his life when the victim approached the vehicle. Additionally, other than defendant, the only other passenger in the vehicle who asserted he saw the victim with a gun was Julius. Shyheim indicated that he did not actually see a gun. Rather, Shyheim stated that although he did not see the victim with a gun, “how his hands was, it looked he had a gun in it. Like it was on his side. But his shirt was down.”
Notably, however, even if a gun was observed on the victim, there was no testimony that the victim brandished the gun and pointed it at the vehicle’s occupants. Furthermore, Brentwood Howard testified that he was with the victim on the night of the party and the victim was not armed. No firearms were found on the victim or at the scene of the shooting. The credibility of a witness is within the sound discretion of the trier of fact, who may accept or reject, in whole or in part, the testimony of any witness; therefore, the credibility of witnesses will not be reweighed on appeal. State v. Macon, 06-481 (La. 6/1/07), 967 So.2d 1280; State v. Rowan, 97-21 (La.App. 5 Cir. 4/29/97), 694 So.2d 1062, 1066.
Although evidence was presented regarding the victim’s history of violence, including a prior altercation with Julius (which defendant was unaware of) as well as with defendant’s cousin Dale,[2] defendant himself had never been in an altercation with the victim. Further, defendant admitted that he fled the scene after the shooting. It can be argued that defendant’s flight from the scene after the | gincident is inconsistent with a theory of justifiable homicide. See State v. Wallace, 612 So.2d 183, 191 (La. App. 1 Cir. 1992), writ denied, 614 So.2d 1233 (La. 1993). A defendant’s flight and attempt to avoid apprehension are circumstances from which a trier of fact may infer a guilty conscience. State v. Cazenave, 00-183 (La.App. 6 Cir. 10/31/00), 772 So.2d 864, 860, writ denied, 00-3297 (La. 10/26/01), 799 So.2d 1151.
After listening to the testimony and considering the evidence, the trial judge did not believe defendant committed the homicide in self-defense. The trial judge determined that the evidence did not support the conclusion that defendant could reasonably have believed his life to be in imminent danger. The fact-finder must make the ultimate decision in determining whether a defendant proved his condition and whether the State negated the defense beyond a reasonable doubt. State v. Hyman, 09-409 (La.App. 5 Cir. 2/9/10), 33 So.3d 271, 278, writ denied, 10-0548 (La. 10/1/10), 45 So.3d 1094. The State adequately negated the defense of justification beyond a reasonable doubt in this case. Accordingly, we find that a rational fact-finder, after viewing the evidence in the light most favorable to the prosecution, could have found beyond a reasonable doubt that the homicide of the victim was not committed in self-defense. This assignment of error is without merit.
ERRORS PATENT
The record was reviewed for error patent in accordance with La. C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La. 1975); and State v. Weiland, 556 So.2d 175 *1035 (La. App. 5 Cir. 1990). The following errors requiring corrective action were noted.
The State of Louisiana Uniform Commitment Order contains the incorrect offense date. It reflects the date of the offense as May 26, 2013, but the record indicates that the offense was committed on May 26, 2013.
1 mThis Court has previously remanded for correction of the uniform commitment order in its error patent review. See State v. Lyons, 13-664, p. 9 (La.App. 6 Cir. 1/31/14), 134 So.3d 36, writ denied, 14-0481 (La. 11/7/14), 152 So.3d 170 (citing State v. Long, 12-184, pp. 10-11 (La.App. 5 Cir. 12/11/12), 106 So.3d 1136, 1142). Accordingly, we remand this matter and order that the Uniform Commitment Order be corrected to reflect the correct date of the offense. We also order the Clerk of Court for the 40th Judicial District Court to transmit the original of the corrected Uniform Commitment Order to the officer in charge of the institution to which defendant has been sentenced and the Department of Corrections’ legal department. See Long, 12-184 at 10-11, 106 So.3d at 1142.
Additionally, although the commitment reflects that defendant was given a proper advisal of the time period for seeking post-conviction relief as required by La. C.Cr.P. art. 930.8, the transcript indicates that the trial court failed to advise defendant of the post-conviction relief period. The transcript prevails when there is a discrepancy between the commitment and the transcript. State v. Lynch, 441 So.2d 732, 734 (La. 1983).
If a trial court fails to advise, or provides an incomplete advisal, pursuant to La. C.Cr.P. art. 930.8, the appellate court may correct this error by informing the defendant of the applicable prescriptive period for post-conviction relief by means of its opinion. See State v. Brooks, 12-226 (La.App. 5 Cir. 10/30/12), 103 So.3d 608, writ denied, 12-2478 (La. 4/19/13), 111 So.3d 1030; State v. Taylor, 12-25 (La.App. 5 Cir. 6/28/12), 97 So.3d 522, 538; State v. Jacobs, 07-887 (La.App. 5 Cir. 5/24/11), 67 So.3d 535, writ denied, 11-1753 (La. 2/10/12), 80 So.3d 468, cert. denied, — U.S. —, 133 S.Ct. 139, 184 L.Ed.2d 67 (2012); State v. Neely, 08-15707 p. 9 (La. App. 5 Cir. 12/16/08), 3 So.3d 532, 538, writ denied, 09-0248 (La. 10/30/09), 21 So.3d 272.
^^Accordingly, defendant is hereby informed that no application for post-conviction relief, including an application seeking an out-of-time appeal, shall be considered if it is filed more than two years after the judgment of conviction and sentence has become final under the provisions of La. C.Cr.P. arts. 914 or 922.
DECREE
For the foregoing reasons, defendant’s conviction and sentence are affirmed. This matter is remanded to the trial court for correction of the Uniform Commitment Order. The Clerk of Court for the 40th Judicial District Court is ordered to transmit the original of the corrected Uniform Commitment Order to the Department of Corrections and to the officer in charge of the institution to which defendant has been sentenced.
AFFIRMED; REMANDED FOR CORRECTION OF UNIFORM COMMITMENT ORDER

. Prior to commencement of trial, defendant stated that he was changing his plea "to an affirmative defense of self defense by reason of injustification [sic] ... under Revised Statute 14[;]20.”

. Notably, defendant admitted that the altercation between the victim and his cousin did not involve a firearm.